Good morning. I'm Mary Beth Lipsmith for the Plaintiff's Appellants and the Petitive Class, and with me at council table is Graham Lipsmith, my partner. So I'm the rare plaintiff's lawyer arguing before you that you should reverse and remand because the district court did not conduct the requisite rigorous analysis. And usually that would be a defendant arguing that. The reason I'm making that argument is because of the many legal errors that the district court committed in its order, both denying class verification and excluding Dr. Paul Brown as an expert under Daubert. The district court committed many legal errors, the first of which was misidentifying the claim at issue for the Unfair Competition Law Claim, or UCL, how I'll refer to it today. We proceeded on an unfairness claim. The court had dismissed our fraudulent business practices claim and our unlawful business practices claim. However, the court applied the law on fraudulent business practices to the case. That was both in finding Dr. Brown inadequate to opine on disclosures that went to the likelihood of public deception. That was not an element of the claim. So not only did the court deprive plaintiff's and appellants of moving forward with the claims they actually wanted to certify, but the court also imposed an additional legal burden that was not at issue. So any one of the district court's legal errors is sufficient basis to reverse and remand. They are misidentifying the claim, applying the incorrect law, finding Dr. Brown unqualified to opine on likelihood of public perception, the disclosures, not considering the breach of warranty claim, not considering the unfairness claim as the first step in the analysis for commonality, as the first step in the analysis for predominance, and at all with respect to the reliability or relevance of Dr. Brown's opinion. So counsel, I take your point that the court seems to have misdescribed the claim that you were asserting, but even under a correct description of the claim, you need to show that the product was defective, right? Yes. And for that, you have the other parts of Dr. Brown's declaration. Yes. So I guess where I'm going with this is, and I think this may be a question for the other side too, doesn't the class certification question basically rise or fall with the admissibility of Dr. Brown's analysis of whether the product is defective? As to the defect, yes. That is the main theory of, main bit of evidence we have to support, or volume of evidence, I guess I should say, to support the defect. Okay, so then maybe you can turn to the question of why under Daubert the district court abused its discretion. I would be happy to. I think one important part about the district court imposing the burden of the fraudulent business practices is that the court didn't look at the relevance of Dr. Brown's opinion. And Dr. Brown was found qualified to opine on concrete and cement and metal embedded in concrete. So that's exactly what the theory is. The disclosures that Dr. Brown discussed, Simpson's warnings, Simpson's specifications, Simpson's guidelines, all of that went to the technical aspects of how the product works. So if you'll indulge me, I'm just going to do a quick little demonstration with my arm. So this is the strap. Can I just ask you, where did Dr. Brown explain how the ACI standards applied to Simpson's products? So Dr. Brown, if I may grab my record. Please, go ahead. Dr. Brown discusses ACI 222 and ACI 318. ACI 318 says that the theory here is that metal embedded in concrete needs a sufficient concrete cover. That's not a controversial scientific principle that's used all the time in construction. Dr. Brown cites to ACI 318 for that principle, which does apply to rebar. And Dr. Brown also points to ACI 222, section 2.4.6, which is in volume 2 at 144. And there it says, any embedded metal in concrete should have the same minimum concrete cover as that recommended for steel reinforced for the anticipated exposure conditions. If that cannot be achieved, additional protective measures are needed. So essentially what ACI 222 does, and Dr. Brown is a member of the committee on ACI 222, has written about this extensively, taught about it, et cetera, is that the ACI 318... So that was attached to his supplemental declaration. That was attached to his supplemental declaration. So you have to look at the exhibit to the supplemental declaration to make that connection. And also in his initial declaration, he talks about ACI 222... Does he ever explicitly state it, or you have to make the connection from looking at the attachment? I think Dr. Brown is not a wordsmith, and I think that his declaration... I think you do look at the attachment, although he does talk about ACI 222 in his original declaration as well. One second. He talks about it in paragraph 22, as he's talking about the concrete cover in paragraph 20 and 21, about it being at the 45-degree angle and not having diminishing concrete cover. And then he talks about 222 in the next section, about the importance of having the adequate concrete cover from 222. That is not the 2.4.6 report that I was just discussing. And where in the record does it say that personal observation is an appropriate methodology for what he wants to do? Where does he say that he's done personal observation? No, I see where he says that he personally observed the defect, but where does it say that that's an accepted methodology, just personal observation? So the other experts, I don't know if they're doctors, I'm sorry, but the three experts in support of Simpson's opposition to a class certification all rely on personal observations as well. That's Spicandini, Haynes, and Neff, I believe are their names. Their declarations are in volumes five and six. And they rely on personal observations and the same sort of analysis, looking at the rust, looking at a strap, saying it's corroded or not. And under 703, Federal of Evidence 703, those are the kinds of things that experts in this field would rely upon. And so there are also some cases that we have cited, like, for instance, Eluso, I think you say it, versus Middle Fork. And that was the case involving the fire investigator who looked at a fire investigation, essentially. And that was found that he used the kinds of things a fire investigator would use, which included personal observation kind of things. But what are the personal? I mean, he looked at, I mean, what, about a dozen or so different houses, I think, that had these installed? He has looked at hundreds of these kinds of straps. But, yes, he lists about a dozen. I don't know the exact number, but, yes, that's close enough. But how, I mean, setting aside for a moment the principles reflected in ACI 222, which, setting that to the side, if you just have the personal observations, how does that establish? I mean, there must be, you know, thousands of these products in the world. How does observing, you know, some number of houses where you've observed corrosion establish that there's some, you know, common defect to the product? There seems to be an inferential leap that's not explained in that part of his declaration. So I think the theory here for Dr. Brown and what he says is that all of the straps suffer from, or products as we call them in the briefs, suffer from the same defect, which is that they can never have, because of how they're covered with concrete, they can never have sufficient concrete cover for the part of the strap that is what's often corroding. And it doesn't matter, as he says, what ambient conditions it has or if it's installed perfectly or if it's misinstalled. The lack of concrete cover, and because it's only galvanized with a very low galvanization, the G90, it is always going to be susceptible to corrosion. And so a requirement that you would have to show, you know, many of them corroding or whatever at this stage for a breach of warranty claim would be going to the merits, and it would be trying to prove the defect at classification, which the law does not require under, like, Wolin or Baker and that line of cases. So I don't know if that's answering your question. So, I mean, maybe, I mean, just to pick up on the last point you made. Yes. What, if the class were certified and the case were to proceed, what sort of proceedings do you envision to establish on a classified basis that the product is defective? I mean, you just put in Dr. Brown, or is there something more that you would introduce? Certainly, I'm sorry, I didn't mean to speak over you. No, no, that's fine. There are certainly other experts we would have. You know, you could have structural engineers. You would have people to show how you would replace it. You would have, you know, more testing in the field. This is only, you know, class discovery, so you could have, you know, obviously more discovery. Dr. Brown was not able to inspect the samples from these specific homes because they're in Simpson's possession, and he did not, they did not give us access to them. Also, the inspections took place during a COVID time that was kind of a little dicey, so Dr. Brown was not there. But what you would do is you would go forward and you would harvest more straps during discovery, but you don't necessarily need to harvest thousands of straps in order to prove the defect. The evidence is that no matter how, just like in Wolin and in Baker, the Xbox machine left Microsoft and Baker with a defect in its machine that scratched the disk. Just like in Wolin, the wheel left the Land Rover factory with the geometrical defect in its wheel. Here, the strap, the way it's specified to be only, they only talk about the wood framing service environment, the way it's installed, the way it does not have enough concrete cover because of the angle, it can never, the theory is, it is defective, and so it left the factory. Let's do the samples. Aren't these samples from your client's homes? Yes. So why couldn't your plaintiff's expert look at plaintiff's homes? It's not the homes that are at issue. It's the straps that are at issue. So the Simpson briefing did focus on the homes. The district court focused on the straps themselves. It was this investigation that Simpson was conducting during the process. This is common in construction cases where the builder or the manufacturer will conduct their own investigation. And so they harvested samples and provided pictures but did not give us access to the samples, although we asked many times in advance of the briefing schedule. Right, but presumably they didn't remove the straps from your client's home. So presumably there's still something there at the homes of your clients that the ground could have observed. They did not remove all the straps, no. So is the question why didn't we not remove more straps? No, I guess it's, and I don't want to waste time on this. I was just curious from reading why your expert didn't just go observe your client's homes himself. Why did it need to rely on the sample that Simpson took? Right, so I think that his theory, and he has opined on straps and these kinds of products in many other cases, and his research has looked at them and with 222 has worked on them, and those standards end up being enshrined in the law, right? That becomes, the ACI becomes the international building code that states adopt wholesale. So, for instance, the California building codes are based on the ACI principles. And so he believes that the conditions of the homes are not indicative of the defect because the lack of concrete cover means they're all susceptible to premature corrosion and failure during the intended life of the product. What do you make of the district court's determination that Dr. Brown developed his opinions for the purposes of litigation? He did not develop his opinions for the purpose of litigation because he does work in this field, has done work in this field for 45 years as a material scientist. He did not develop the opinions that metal corrodes in concrete, that there's insufficient concrete cover, and so on and so forth. If it's okay, I would like to reserve the rest of my time for rebuttal. You may. Thank you. Mr. Pataldon? Thank you, Your Honor. May it please the Court, good morning. I'm Petter Pataldon, appearing on behalf of the Simpson Companies. I'm joined by my co-counsel, Eric Howard. I'd like to start with Judge Koh's first question because I think it gets to the heart of the matter. Where did Dr. Brown apply the ACI standards that he invoked? And the answer is that he did not. He invoked two standards, ACI 318 and ACI 222. ACI 318 doesn't apply to Simpson's products, and ACI 222 contains an exception that Simpson satisfied. And I'd like to talk about those in detail. Well, before you get there, didn't Dr. Brown discuss ACI 222 and acknowledge when he was looking at the record himself that, indeed, Dr. Brown did explain his reliance on those standards? Your Honor, no. What Dr. Brown did was to cite ACI 222, which has some general language about metal and concrete, and he claimed that based on ACI 222, there needed to be a three-inch layer of concrete. But what Dr. Brown did not then do was to look at the next sentence and the next paragraph in ACI 222. This is at page 144 of the excerpts. The next sentence, after the one that Dr. Brown relies on, says that additional protective measures may be taken. That's what Simpson did here. It galvanized the steel connectors in a protective coating of zinc, and its connectors are also protected by virtue of the design decisions that the builders make. They put exterior cladding on the house. They use a weep screed. And in the next paragraph below the one I just referenced, the drafters of ACI 222 say, consideration should be given to the use of galvanized or stainless steel. That's exactly what Simpson did. But that all sounds like good cross-examination to me. How does it disqualify Dr. Brown? Your Honor, what Dr. Brown never did was to acknowledge those statements and explain why, in his view, they could be reconciled with his opinion. That's what makes his opinion unsound. He doesn't acknowledge the contrary weight of the very standard that he is invoking. That is not an abuse of discretion for a district judge as a gatekeeper. Can we talk about the zinc? Look at paragraph 11 of his declaration. He cites a February 20, 2003, Concrete Industry Association meeting, where the panelists at the meeting say that zinc is a thin, sacrificial coating that will quickly be dissolved, consumed in acidic environments. So he addresses your point that the zinc coating is sufficient. That's paragraph 11 of his original declaration. So tell me why that doesn't – I mean, the combination of him citing that AC – what is it, ACI 222 committee report saying, in general, any embedded metal in concrete should have the same minimum concrete cover as that recommended for steel reinforcement for the anticipated exposure conditions. By him saying – or citing something that says any, any would apply to Simpson products. And then he has that point in his declaration saying zinc coating is not enough. It's going to dissolve. So why doesn't that address your products? Your Honor, it doesn't carry the day because it's limited to the acidic environments that are stated there by the panelists. As our experts explained, homes are not acidic environments. There might be pool chemicals. That's really the only acidic element that you have. So that particular statement simply is in opposite to the kind of connectors in the concrete foundations that we're talking about. No, but I look at a lot of the arguments that have been made. They sound like fabulous cross-examination and closing argument, but it goes to weight, not admissibility, doesn't it? So many of these – let's just back up here. Do you agree that ACI standards are legally accepted standards in the industry? We're not fighting the idea that ACI standards can provide guidance in a general way, Your Honor. In fact, if Dr. Brown had proposed simply to testify about background concrete principles, that would have been fine. The problem is, in order to certify a class, Dr. Brown needed to tie that framework, that methodology, those standards that the ACI – But why isn't what I just stated the tie that's sufficient for a Daubert? Well, Your Honor, as I said, because we're not dealing with acidic environments here where the connectors are, you don't have a common link between the kind of standard or the methodology he's proposing from that ACI standard and the particular homes that we have. But it seems like you're disputing more the merits of what he's saying versus whether it's admissible and whether, you know, within this industry, it would be scientifically acceptable for somebody with his experience, based on his personal observations, his reliance on industry standards, to come to a conclusion, which I understand you fundamentally disagree with, and that may not prevail at trial. I don't know. But is it just enough for admissibility, which is a very different question than the merits? Well, and it's not, Your Honor, because there's another flaw, which is he also didn't consider the additional protective measures that are in place. That's the exterior cladding and the weep screeds. These are other elements that eject moisture from the stucco and mean that the connectors will not be exposed to undue moisture. That's another additional protective measure that ACI 222 talks about, additional protective measures may be taken. That's another one. There's no discussion of that whatsoever in Dr. Brown's opinion. He gives that no credence. He doesn't factor it in one way or the other. And ACI 318, which is the other standard that he invokes, doesn't apply at all. That applies to rebar when you have a structural element that's completely encased in the concrete. We don't have that here. Our products are not rebar. We're selling connectors that fasten by nailing the embedded portion of the steel connector to a frame of the house or a wooden beam. Rebar has nothing to do with this case, and Dr. Brown has no explanation for that. Now, my friends on the other side tried to draw an analogy at the hearing when the district court questioned them about that. But arguments of counsel don't carry the water for an expert who needs to satisfy the Rule 702 standards. And so I think for that reason, the district court was well within its rights to believe that this did not satisfy the Rule 702 standards. I didn't hear argument from the other side about why the court should reverse based on the disclosures determination that the district court made. And I think that's correct. The district court ruled that Dr. Brown was not qualified. You would agree, though, that an expert could rely on general principles, right? Or you're saying unless it's specifically addressed to your client's product, you don't think it's admissible? It's a two-part answer, Your Honor. First, yes. And as we acknowledge in our brief, of course an expert can talk about general principles, assuming they're qualified. And we're not fighting Dr. Brown's qualifications about concrete. He knows about concrete. But in order to connect an opinion to the necessary class certification prerequisites that plaintiffs have the burden of satisfying here, Dr. Brown had to do much more than testify in the abstract about concrete and its principles. He had to explain how those principles, how that methodology, explains an inherent defect that caused the damage that the plaintiffs are alleging in their homes. That's the analytical gap in this case. He doesn't have an explanation that links these two. Well, let's look at ACI 318. That says a three-inch concrete cover is mandatory. And he has then ACI 222 about what kind of minimum concrete cover is required for any embedded metal in concrete. So let me ask you another question. It seems like you're saying he needed to basically eliminate all other potential causes. Is that right? He needed to have an opinion that was capable of weeding in the causes that he thinks were attributable to Simpson's products and weeding out the causes that were not. And he has not identified any. And you rely on CLAR for that, right? That any expert would have to eliminate all other potential causes. Is that right? Yes, but not just that. This is more fundamental than that. The reason this is more fundamental is because unless Dr. Brown can identify the cause of the corrosion that he alleges as being the design defect in Simpson's products, there won't be any common proof that will allow a class-wide litigation to proceed on the terms that Rule 23 requires. I think this was sort of the gist of some of Judge Koh's questions. Even if 318 and 222 don't by their own terms apply for the reasons that you said, why can't he, Dr. Brown, use them as reflecting principles of how metal corrodes when in concrete and what needs to happen to protect metal from corrosion in concrete and drawing on those principles say that your product, because it isn't consistent with those principles, is going to be vulnerable to corrosion and is therefore defective? I mean, whether or not that's right, why isn't that something that he as an expert can offer an opinion on? Well, Your Honor, if he had done that, it might potentially be acceptable. Like, for example, take ACI 318. If Dr. Brown had acknowledged this is about rebar, Simpson doesn't make rebar, but I'm going to analogize the standards and the framework in 318 to Simpson's products for reasons X, Y, and Z, then the district court would have had to evaluate that analogy and determine whether it was good science. But he didn't do that. He didn't acknowledge that. It was left to counsel to try to draw that analogy, and that's why the opinion is unsound. Now, I'd like to get Judge Moore. So CLAR was a medical diagnosis case, and the record established that it was scientific procedure, that before you're going to treat someone for medical illness, you have to eliminate other possible causes because you might end up treating them for something they actually don't have. Where in the record does it say for this type of steel embedded in concrete that it is scientific procedure that you have to eliminate all causes, as in a medical diagnosis case? Otherwise, CLAR doesn't apply here, does it, unless it's analogous and it doesn't seem like it is. Your Honor, I don't think it's so much a question about what's in the record. I think it's sort of a background question about what a good scientist does, what any expert ought to do, which is when you're proposing that something is the cause, you need to rule out other contributing or possible causes. But why doesn't that go to weight, not admissibility? It is his personal opinion based on his experience and his observations and his participation in the ACI 222 Committee. This is his personal opinion based on what it seems like you concede is established scientific methodology. Your Honor, I would suggest that all of the work in your question is being done by the phrase personal observations, and that's not a methodology. We know from the U.S. Supreme Court's decision in Joyner, the ipsy-dixit of the expert is unsatisfactory. But did your experts rely on their own personal observations as well? Our experts relied on personal observations, but they also relied on treatises. Why is it okay for your expert but not the other side's? Because ours was grounded in a treatise. Let me give you an example, if I might. In our expert Haynes's declaration, this is at page 837 of the record, Haynes explains that Dr. Brown is simply wrong in his separate opinion that concrete or cement paste is less permeable than the sand and aggregate that appears in it. And Mr. Haynes cites a treatise for that point. Dr. Brown has no response to that in his supplemental declaration. He says, well, I looked at these materials using this microscope, and here's an example of where I think that's not the case. That's not a response to our expert offering a learned treatise that explains these principles and these background ideas. I'd like to offer one other point, because I think you're free to affirm on the alternative ground that the district court enunciated, which is that a class action would not be superior. There's no superiority here. And I think the key insight in the district court's rationale is the homeowners here, the class of plaintiffs that counselors seek to represent, would do much better on an individual basis bringing a construction defect lawsuit that would allow them to recover for all of the harm that their home has suffered. Assuming they can prove their claims, if they pursue the kind of individual construction defect action, they can recover for everything. Rather than this class action, which seeks to allow them to recover a slice, a subset of the damages that they allege that are attributable to Simpson's connectors. Your client is not a defendant in these homeowners' lawsuits in state court. Is that right? Yes. In the record that we have, Simpson is not yet a defendant in the action or in the claim notices that have been filed. But again, as we know from construction defect litigation, that makes no difference. The defendants who are sued may file third-party complaints against Simpson. We're happy to defend our products in those suits if necessary. But it makes no sense for an individual homeowner to prefer this class proceeding designed to get one narrow slice of damages as opposed to an individual action where they can be made whole for all of the problems in their home. And if you allow the class— But did the district court really evaluate that independently? I mean, by which I mean, if we were to say that it was an abuse of discretion to exclude Dr. Brown, wouldn't we at least need to remand to allow the district court to conduct the assessment under Rule 23 with that in mind? Well, I would agree that a remand would be sort of the worst remedy that Simpson ought to suffer here, but I don't think a remand is necessary because in the discussion of superiority in the record— I believe it's page 23 of the excerpts— the district court said that the existence of other actions related to plaintiffs' homes and foundations signify a class interest in individually controlling the prosecution of separate actions, and litigation concerning Simpson's products has already begun. There's no requirement in Rule 23 or Rule 52, for that matter, that a judge make findings and conclusions or offer elaborate reasoning. The judge has stated right there that a class action is not a superior method of adjudicating the particular claims that the homeowners have here, and that's not an abuse of discretion. But that's the only sentence, and how does that address, in looking at Rule 23b-3, how does it address the class member's interest in individually controlling the prosecution or defense of separate actions, the extent and nature of any litigation concerning the controversy already begun by or against class members? Your Honor, I think that— Does that one sentence cover both adequately? Yes, Your Honor. Remember, there was voluminous briefing before the district court. The court held a hearing where it asked lots of questions. I don't think it's fair to— But we're not reviewing the hearing transcript here. We're reviewing the district court's order, and that's the only sentence I see as to those two considerations. That's correct, Your Honor, but again, as I mentioned before, there's no requirement that the court give elaborate findings and conclusions, and this statement really cuts to the heart of the matter. If we know that in an individual action a plaintiff, a homeowner, can be made whole by suing the full panoply of defendants who might potentially owe duties and have breached them, that ought to be preferred by every homeowner to a class proceeding against Simpson that can only provide a limited subset of the remedies. If the court has no further questions, I'd ask you to affirm the order of the district court. Thank you. Thank you. As to superiority, I think the district court's findings were incorrect. It didn't look at the nature and extent of litigation. It didn't consider that Simpson's not a defendant. Nothing in Rule 23 requires homeowners to seek individual construction defect claims. This is a small product that is not very expensive, but that is used very widely, technical case, very big company. A class action would be an appropriate way to go forward in plaintiff's view. As to Haines saying that Dr. Brown is wrong about cement, Dr. Brown did talk about the SEM analysis he did that shows the porosity and the concrete around the product. It sounds a lot like counsel is arguing on the other side about the merits rather than the weight, and case after case says that if there is, you know, issue of weight, that that should be subject to cross-examination. The ACI principles and general principles as to concrete are at issue here. They're not controversial, and they can be explored in cross-examination. And what's your answer to the point that your friend on the other side made, that, you know, no one questions the ACI principles, and I think no one questions that the ACI principles, like, by their own terms, don't get you to the conclusion that this product is defective. So in between there is some sort of line of reasoning that analogizes to the ACI or draws principles out of them, and that that analysis is what Dr. Brown didn't actually spell out. So what's the answer to that? So I think that Dr. Brown did spell that out. I think he, in paragraphs in his original declaration, he does spell out all the theories behind ACI 318 and all the theories behind ACI 222 and the general scientific principles about how metal embedded in concrete is at risk of corrosion if it's not sufficiently protected. And he talks specifically about the galvanization here and how it was insufficient. And I think that he goes through the analysis there as a material scientist with years and years of experience, and case after case show that someone who has particular experience in an area is qualified to draw conclusions. Science is not static. Novel theories come about. New medications happen. New procedures. So ELOSU, Hopkins, other cases that are cited in our briefs do go through this detailed analysis about how experts in scientific fields can draw conclusions from the principles they know, from their experience, from their research, from the work that they do. I am out of time. Okay. Thank you. I urge you to reverse on both Dr. Brown and class certification. Thank you. We thank both counsel for their helpful arguments this morning, and the case is submitted.
judges: MILLER, KOH, Molloy